# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In Re:

GEORGE M. HERSH, II, and
MARCIA G. HERSH,

      Debtors.

Case Number 13-21417-7 (RDB)

---

KAW VALLEY BANK,

      Plaintiff,

v.

GEORGE M. HERSH II,

      Defendant.

Adversary Number _____

---

## ADVERSARY COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF DEBT

COMES NOW Kaw Valley Bank ("**KVB**" or the "**Plaintiff**"), by and through counsel, Stevens & Brand, LLP, and for its adversary complaint (the "**Complaint**") against Defendant George M. Hersh, II ("**Hersh**" or the "**Defendant**"), states and alleges as follows:

### JURISDICTION & PARTIES

1. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523.

2. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

4. The above-captioned bankruptcy case was filed on June 3, 2013 (the "**Hersh Filing Date**").

5. The Plaintiff is a Kansas banking corporation and may be served with any response by serving its counsel at its address contained herein.

6. The Defendant may be served in accordance with Bankruptcy Rule 7004(b)(9) by mailing a copy of the Summons and Complaint to 12116 Alhambra, Leawood, Kansas 66209.

## PROCEDURAL BACKGROUND

7. This is an adversary proceeding in which KVB is objecting to the dischargeability of an obligation (the "**Obligation**") owed by Hersh to KVB. The Obligation is comprised of funds advanced to GMJ (defined in paragraph 10 below) and/or Hersh, or proceeds of collateral lost due to the Defendant's conduct in conjunction with, and in contravention of, the Consulting Agreement (defined *infra*).

8. The deadline to file a complaint to determine the dischargeability of debts pursuant to 11 U.S.C. § 523 is no later than sixty (60) days after the first date set for the Meeting of Creditors, or September 3, 2013.

9. On August 28, 2013, KVB filed a Motion to Extend Time to File Objection to Dischargeability of Debts Pursuant to 11 U.S.C. § 523 (the "**Motion to Extend**"), as to George M Hersh, II. The Defendant filed an Objection. At a hearing on October 30, 2013, the Court granted the Motion to Extend and established November 2, 2013, as the deadline for KVB to file its Complaint, which has been timely filed.

## GENERAL ALLEGATIONS

10. Hersh is the former CEO and President of GMJ Global Logistics, Inc., Sports Associated, Inc., O'Neil Moving & Storage, Inc., O'Neil Moving Systems, Inc., O'Neil Relocation – Kansas City, Inc., Sports Associated Warehousing, Inc., Sports Associated Transportation, Inc., Corporate Relocation Services, LLC, Topeka Transfer & Storage, Inc., Capital City Distribution, Inc., and Sports 635, LLC (collectively, "**GMJ**").

11. Prior to 2011, Hersh, as the CEO and President of GMJ, entered into certain loan agreements with KVB to finance the operations of GMJ.

12. On September 6, 2011, KVB and GMJ, Hersh, and Marcia Hersh, signed an agreement titled, "Unconditional Unlimited Continuing Guaranty, Cross-Default, and Cross-Collateralization Agreement" (the "**Cross-Default Agreement**"). The Cross-Default Agreement reflects the comprehensive nature of the existing loan arrangements by and between KVB and GMJ, and also referenced the existing promissory notes (the "**Promissory Notes**") and security agreements (the "**Security Agreements**") executed by Hersh in favor of KVB.

13. Under the Security Agreements, KVB had a security interest in various personal property including, but not limited to, accounts receivable and contract rights of the GMJ entities (the "**Collateral**").

14. Among other things, the Cross-Default Agreement provides "that any and all Collateral shall secure any and all Indebtedness and repayment of all sums due" pursuant to the Promissory Notes and other documents evidencing indebtedness.

15. Hersh, on behalf of GMJ, also executed and delivered to KVB continuing guaranties or other instruments (the "**Guaranties**") (collectively, with the Cross-Default Agreement, Promissory Note, and other loan documents referenced in the Motion for Relief, referred to as the "**Loan Documents**"), by which each GMJ entity, as well as Hersh and Marcia Hersh, personally guaranteed repayment of some or all of the indebtedness owed to KVB under the Loan Documents and the Cross-Default Agreement.

16. In October of 2011, KVB called GMJ's line of credit after Hersh failed and refused to address the staggering and continuing losses experienced by GMJ, and could offer no other collateral to secure additional advances.

17. More than a week after Hersh received notice that GMJ's line of credit with KVB had been called, Hersh notified GMJ employees that there were no funds to pay the employees' payroll.

3

18. On October 25, 2011, Hersh entered into an agreement with KVB for the collection and liquidation of KVB's Collateral, namely the accounts receivable and the contract rights (the "**Consulting Agreement**").

19. The Consulting Agreement was signed after GMJ ceased operations.

20. At the time Hersh executed the Consulting Agreement, Hersh was aware that GMJ was insolvent.

21. At the time Hersh signed the Consulting Agreement, Hersh was aware that Hersh and Marcia Hersh were insolvent.

22. At the time Hersh signed the Consulting Agreement, Hersh was aware that the Loan Documents required GMJ to maintain its financial accounts at KVB.

23. Under the Consulting Agreement, Hersh specifically agreed to assist KVB in the collection and preservation of KVB's Collateral.

24. The Consulting Agreement provided that Hersh would assist KVB for the period of October 24, 2011, through January 13, 2012, and be paid $5,000 per week for his assistance in collecting and preserving KVB's Collateral (the "**Consulting Fee**").

25. In exchange for Hersh's agreement to collect and preserve KVB's Collateral, KVB also agreed to advance funds in the approximate amount of $290,000 for the payment of W-2 payroll and related taxes and employee benefits that were owed by GMJ through October 15, 2011 (the "**Delinquent Payroll**").

26. Hersh, as the CEO and President of GMJ, who had continued to operate GMJ after the companies' line of credit was terminated, stood to have personal liability for the Delinquent Payroll.

27. In exchange for Hersh's agreement to collect and preserve KVB's Collateral, KVB agreed to advance funds to pay expenses of collecting and preserving its Collateral including, but not limited to, paying wages and fees to former GMJ employees, and utilizing GMJ electronic

records related to the accounts receivable to facilitate the collection and preservation of KVB's Collateral.

28. At the time the Consulting Agreement was signed, Hersh had knowledge that the integrity of GMJ accounts receivable records depended on the accurate and timely processing and deposit into GMJ bank accounts at KVB of the account debtors' payments on account of the GMJ accounts receivable and contract rights.

29. On or about the date Hersh executed the Consulting Agreement, Hersh opened a new bank account at Country Club Bank on behalf of GMJ (the "**Country Club Account**").

30. On October 26, 2011, one day after executing the Consulting Agreement, Hersh deposited over $297,000 in the newly-opened Country Club Account. The deposit represented funds paid by Liberty Mutual to GMJ for a claim made in regard to real property in which KVB held a recorded mortgage (the "**Liberty Mutual Funds**"), as well as a $31,525.35 check for payment of other insurance proceeds.

31. The Liberty Mutual Funds were issued in two separate checks: (a) the first dated August 31, 2011, in the amount of $130,268.50, and (b) a second check dated September 21, 2011, in the amount of $135,268.50.

32. At the time the Consulting Agreement was signed, Hersh concealed from KVB that he had received the Liberty Mutual Funds.

33. At the time the Consulting Agreement was signed, Hersh was aware that KVB was a loss payee on the policy, and was aware that Liberty Mutual had failed to list KVB on the checks.

34. At the time the Liberty Mutual Funds were secretly deposited in the newly-opened Country Club Account, Hersh knew the Liberty Mutual Funds constituted KVB's Collateral.

35. After signing the Consulting Agreement, Hersh also deposited other proceeds of KVB's Collateral into the newly-opened Country Club Account in contravention of the Consulting Agreement, and Hersh concealed these deposits from KVB and from the former GMJ employees assisting, under the Consulting Agreement, with collection of the GMJ accounts receivable.

5

36. In December of 2011, Hersh opened another new checking account at Country Club Bank, this on behalf of Sports Associated, Inc. ("**SAI**"), wherein Hersh deposited other proceeds of KVB's Collateral in direct contravention of the Consulting Agreement, and concealed these deposits from KVB and from the former GMJ employees assisting, under the Consulting Agreement, with the collection of the GMJ accounts receivable.

37. From December 15, 2011, to December 19, 2011, Hersh opened six (6) separate checking accounts on behalf of six of the GMJ entities at Equity Bank, where Hersh deposited other proceeds of KVB's Collateral in contravention of the Consulting Agreement, and concealed these deposits from KVB and from the former GMJ employees assisting, under the Consulting Agreement, with the collection of the GMJ accounts receivable.

38. On November 10, 2011, Hersh executed a contract for purchase of real estate which encompassed substantially all of the assets of Topeka Transfer & Storage, Inc. ("**TT&S**"), including personal property that was KVB's Collateral, to Larry D. Criqui and Teresa D. Criqui (the "**TT&S Sale**") for $1,400,000. On December 13, 2011, Hersh finalized the TT&S Sale, netting $264,531.18, which Hersh deposited in the newly-opened TT&S bank account at Equity Bank.

39. Hersh concealed the negotiation and closing of the TT&S Sale and receipt of the funds from KVB, and completed the TT&S Sale with actual knowledge that KVB's security interest as a financing statement for "all assets" was on file with the Kansas Secretary of State, and counsel for Plaintiff made it abundantly clear to the Hersh that KVB asserted an interest in the proceeds of the TT&S Sale.

40. On or about December 30, 2011, Hersh arranged for Kansas City Peterbilt, Inc., to sell a 2005 Peterbilt Model 379 titled in the name of GMJ for $78,000 (the "**Peterbilt Proceeds**").

41. Hersh concealed the negotiation of the sale for the Peterbilt and receipt of the Peterbilt Proceeds, though Hersh was aware that KVB held a security interest in the Peterbilt.

42. Hersh deposited the Peterbilt Proceeds in one of the newly-opened Equity Bank checking accounts, and concealed the deposit from KVB.

43. After learning that Hersh was converting and concealing the proceeds of KVB's Collateral in violation of the Loan Documents and the Consulting Agreement, KVB filed a Petition (the "**Foreclosure Petition**") and an Application for Ex Parte Appointment of a Receiver and Memorandum in Support (the "**Application for Receiver**"), in Shawnee County District Court, District of Kansas (Case No. 12 CV 29) on January 9, 2012 (the "**State Court Litigation**").

44. On January 11, 2012, after hearing KVB's Motion, the District Court entered its Order Appointing Receiver Ex Parte (the "**Receiver Order**"), finding KVB's Collateral was subject to irreparable waste and damage.

45. Under the Receiver Order, GMJ, Hersh, and their attorneys were directed not to interfere with the Receiver in the performance of his responsibilities and duties, and immediately turn over all proceeds relating to the Collateral that was in, or may come into, their possession. *See* the Receiver Order attached hereto and incorporated herein by reference as **Exhibit 1**.

46. On January 16, 2012, Hersh caused each of the GMJ entities to file Voluntary Petitions under Chapter 11 of the Bankruptcy Code (the "**Business Filing Date**").

47. On January 31, 2012, based upon the testimony given at an evidentiary hearing on KVB's Motion for Relief from Automatic Stay (the "**Motion for Relief**"), by the Defendant, Marcia Hersh, Jeff Bradley, Craig Heideman, and Doc Criqui, the Court sua sponte appointed a Chapter 11 Trustee on behalf of GMJ.

48. At the hearing on the Motion for Relief, Hersh testified that he never read the Consulting Agreement in its entirety.

49. Hersh intended to deceive and defraud KVB when he executed the Consulting Agreement.

50. Hersh was aware that KVB relied on Hersh's representations and warranties that Hersh would assist KVB in collecting and preserving its Collateral, but had already taken steps to conceal and convert proceeds of KVB's Collateral and to actively conceal the conversion from KVB.

51. Hersh converted proceeds of KVB's Collateral for his own benefit with the intent to

harm KVB.

52. Hersh received all compensation to which he was entitled to receive under the Consulting Agreement.

53. Hersh accepted all compensation he received under the Consulting Agreement, despite the fact that Hersh had actual knowledge during the term of the Consulting Agreement that he was acting in violation of the Loan Documents and the Consulting Agreement by secretly converting proceeds of KVB's Collateral and depositing Collateral Proceeds in secret bank accounts which Hersh concealed from KVB and the former employees of GMJ assisting KVB in collection of the GMJ accounts receivable.

54. Hersh converted and concealed proceeds from the liquidation of KVB's Collateral, knowing that GMJ was insolvent and that Hersh and Marcia Hersh were insolvent and had no other means with which to repay the obligations owed to KVB under the GMJ Loan Documents.

55. Hersh converted and concealed accounts receivable receipts, knowing that the integrity of the collection process and value of the accounts receivable depended on the accurate and complete accounting of all payments from GMJ account debtors.

56. Hersh entered into the Consulting Agreement with the intent to defraud KVB in order to obtain KVB's agreement to pay the Delinquent Payroll and a weekly consulting fee to Hersh, and so that Hersh would be allowed to have continuing contact with GMJ account debtors.

57. Hersh utilized his continuing ability to communicate with GMJ account debtors to harm KVB by diverting and converting proceeds of accounts receivable owed to GMJ.

58. Hersh attempted to extract a release of his personal guaranty under the Loan Documents by converting the accounts receivable and holding it in secret, undisclosed accounts without having any business purpose, and in direct contravention of the Consulting Agreement for which he was receiving and retaining compensation.

59. Hersh made the representations under and in connection with the Consulting Agreement with the intent that KVB would rely on the representations to KVB's detriment.

60. KVB reasonably relied on Hersh's representations and promises when entering into the Consulting Agreement.

61. KVB was harmed by Hersh's deceptions and fraudulent representations.

62. Hersh utilized the GMJ bankruptcies to further harm and forestall KVB from collecting the GMJ accounts receivable by taking no action to preserve or protect any estate property after the Business Filing Date.

63. KVB suffered damages as a result of Hersh's fraudulent conduct. Specifically, KVB seeks a finding that the Obligation, comprised of, but not limited to: the Delinquent Payroll for which KVB advanced funds, the net proceeds of the TT&S Sale, the converted accounts receivable of GMJ that were deposited at Country Club Bank, Equity Bank or at any other banking institution, the Peterbilt Proceeds, the Liberty Mutual Funds, and any other proceeds of sales of GMJ property by Hersh, is not dischargeable, as the Obligation is based upon the fraudulent and intentional actions of Hersh.

64. Hersh received significant benefit from the Consulting Agreement, i.e., an advance of funds for the Delinquent Payroll and potential personal liability therefore, as well as receiving a Consulting Fee, while knowingly and intentionally withholding information, diverting mail of GMJ, and converting proceeds of KVB's Collateral by making deposits into new bank accounts, without KVB's knowledge or consent, and using KVB's Collateral for his own personal use.

65. At the time Hersh entered into the Consulting Agreement, he had no intent to comply with his duties to assist KVB in the preservation and collection of KVB's Collateral.

66. Hersh's actions immediately after the execution of the Consulting Agreement evidence Hersh's true intent. Hersh opened new bank accounts, failed to account to KVB for accounts receivable collected, deposited proceeds of KVB's Collateral in new bank accounts, refused to supply information and details regarding the unauthorized sales of KVB's Collateral, refused to supply information regarding insurance claims and funds received, and generally became uncooperative immediately or shortly after the execution of the Consulting Agreement.

67. KVB has been actively involved in the GMJ Chapter 11 and/or later-converted Chapter 7 cases. Within the confines of those cases and in conjunction with the Chapter 11 Trustee of GMJ (the "**Chapter 11 Trustee**"), KVB has focused its efforts on the liquidation of its Collateral and distribution of its collateral proceeds from the various bankruptcy estates.

68. Prior to the Business Filing Date, Hersh had executed and delivered to KVB one or more continuing guaranties or other instruments, by which Hersh personally guaranteed repayment of all of the indebtedness owed to KVB. Therefore, the continued pursuit of its Collateral and related issues in the GMJ bankruptcy cases necessarily results in a reduced amount owed by Hersh to KVB under the personal guaranties signed by Hersh in favor of KVB.

69. Since the Business Filing Date, KVB has repeatedly requested that the Chapter 11 Trustee provide KVB with documents including, but not limited to, the e-mails of Hersh, so that KVB may determine or verify whether any of its Collateral was sold, diverted, or converted without KVB's knowledge and consent. The Chapter 11 Trustee has indicated that it would cost approximately $5,660.00 to recover the requested e-mails. Therefore, KVB will seek recovery of the e-mails and other information from Hersh through discovery in this adversary proceeding.

70. Upon information and belief, additional sales of GMJ property and Hersh personal property may have occurred, which were not disclosed to KVB, and proceeds of those sales may exist, in which KVB asserts a security interest. KVB asserts that Hersh intentionally failed to keep KVB informed and knowingly sold and converted KVB's Collateral in contravention to the Consulting Agreement, in order to harm KVB.

71. As to the TT&S Sale, the assets of TT&S are and were KVB's Collateral. Despite KVB's security interest in the TT&S assets, Hersh failed and refused to disclose the terms of the TT&S Sale, and failed and refused to turn over the proceeds of the TT&S Sale. As was borne out in testimony at the hearing on KVB's Motion for Relief, Hersh deposited the TT&S Sale proceeds in a new bank account at Equity Bank, and later used the proceeds to pay the bankruptcy attorney of the GMJ Debtors, despite KVB's repeated demands for the same.

72. Upon information and belief, Hersh sold other assets to Johnson, and was compensated personally for those transfers and/or sales.

73. At the § 341 meeting (the "**341 Meeting**"), Hersh testified that he entered into an oral employment or consulting agreement with Johnson. This is evidenced by pay advices filed by Hersh in his bankruptcy case on June 6, 2013. Upon information and belief, these payments represent compensation for the sale of assets by GMJ and/or Hersh in violation of the Loan Documents of KVB, the Consulting Agreement, and later the Receiver Order, the proceeds of which are and were subject to KVB's lien.

74. On or about the week of September 12, 2012, Hersh and his business partner H.T. Paul ("**Paul**") were seeking to sell their interests in certain real property located in Shawnee County owned by Midwest Property Management, LLC ("**Midwest**"). At this time, the State Court Litigation was on file, as well as another case against Hersh and Marcia Hersh personally in the District Court of Shawnee County, Kansas (Case No. 12 CV 74), and KVB was in the process of obtaining a judgment against Hersh. Hersh e-mailed Paul on at least one occasion expressing his concern that closing documents associated with the sale of Midwest would have his "names [sic] on it for Kaw Valley to see," presumably as the *lis pendens* of KVB would attach to the proceeds. Ultimately it did not, however, and KVB asserts and did assert a security interest in the proceeds from the sale of Midwest. The property closed and presumably Hersh was able to receive the money and dispose of it in violation of KVB's liens.

75. As revealed to this Court during the testimony of Hersh at the evidentiary hearing on KVB's Motion for Relief in the jointly-administered Chapter 11 bankruptcies, after entering into the Consulting Agreement, Hersh redirected company mail of GMJ to a newly-designated post office box accessible only by Hersh or his wife, Marcia Hersh. Additionally, Hersh testified that proceeds of KVB's Collateral, namely customers' checks for payment of outstanding account receivables, were retained and converted by Hersh and deposited into new bank accounts, for his own use.

76. Hersh has also admitted in e-mails to having retained accounts receivable from several of the GMJ entities, most notably SAI. Hersh also sold property of GMJ and/or Hersh's personal property without KVB's knowledge or consent in sales in which the details have not been fully disclosed to KVB. These actions of Hersh are in violation of the Consulting Agreement and form the basis for the Obligation owed to KVB by Hersh. KVB alleges that the Obligation is nondischargeable based upon the fraudulent and intentional actions of Hersh.

## COUNT I – 11 U.S.C. § 523(a)(2)(A)

77. The Plaintiff adopts and re-alleges paragraphs 1 through 76 above as though fully set forth herein.

78. The Defendant incurred a debt to KVB for money, services, or an extension, renewal, or refinancing of credit. The Defendant incurred the Obligation to KVB based upon his actions in contravention to the Consulting Agreement.

79. The Obligation was knowingly obtained by actual fraud, false representations, or false pretenses.

80. The Defendant made promises and representations to KVB with the intent to deceive, and for the purpose of inducing the Plaintiff to act upon the promises.

81. The Defendant made promises and misrepresentations to the Plaintiff in connection with the advancing of expenses of GMJ including, but not limited to, the following: the purpose for which the Defendant was obtaining money from the Plaintiff, the use of such money, and the timing and manner of repayment of such money.

82. The Defendant represented that he would assist KVB in the preservation and collection of KVB's Collateral in exchange for the Consulting Fee and advance of funds for the Delinquent Payroll.

83. The Defendant's representations and concealments were known by the Defendant to be false or untrue, or were recklessly made without knowledge concerning them.

84. The Defendant failed to exercise reasonable care or competence in obtaining or communicating the false information.

85. The Defendant supplied the information to the Plaintiff knowing that the Plaintiff was relying upon him for accurate information and guidance.

86. Plaintiff KVB reasonably relied on the Defendant's conduct.

87. Plaintiff KVB suffered damage or injury as a result of the Defendant's conduct, as Collateral that KVB asserted an interest in was not preserved or collected as promised by the Defendant.

88. The Defendant's actions and the Obligation created thereby constitute grounds for an objection to discharge under 11 U.S.C. § 523(a)(2)(A).

**COUNT II – 11 U.S.C. § 523(a)(4)**

89. The Plaintiff adopts and re-alleges paragraphs 1 through 88 above as though fully set forth herein.

90. The Defendant incurred a debt to KVB for money, services, or an extension, renewal, or refinancing of credit. The Defendant incurred the Obligation to KVB based upon his actions in contravention to the Consulting Agreement.

91. The Defendant fraudulently appropriated property and money of KVB which comprises the Obligation including, but not limited to, diverted accounts receivable, the TT&S Sale proceeds, and other proceeds from sales of GMJ's assets to Johnson, the Peterbilt Proceeds, the Liberty Mutual Funds, the proceeds from the Midwest sale, or other Collateral proceeds that were utilized by the Defendant for his personal use and expense.

92. The above money or property had been entrusted with the Defendant.

93. The Defendant incurred the above debts by fraudulently and wrongfully carrying away or permanently depriving the Plaintiff of its Collateral.

94. The Defendant intended to convert the Plaintiff's Collateral for his own personal use.

95. The Defendant knowingly and purposefully converted KVB's Collateral instead of turning it over, and therefore the funds could not be applied to the various loan balances of the Promissory Notes, as agreed in the Consulting Agreement.

96. The Defendant deprived the Plaintiff of its Collateral without the consent of KVB.

97. The Defendant had no intention of performing his promises at the time the Defendant received the money and property from the Plaintiff, and therefore his conduct amounts to larceny.

98. The Defendant's actions and the Obligation created thereby constitute grounds for an objection to discharge under 11 U.S.C. § 523(a)(4).

### COUNT III – 11 U.S.C. § 523(a)(6)

99. The Plaintiff adopts and re-alleges paragraphs 1 through 98 above as though fully set forth herein.

100. The Defendant incurred a debt to KVB for money, services, or an extension, renewal, or refinancing of credit. The Defendant incurred the Obligation to KVB based upon his actions in contravention to the Consulting Agreement.

101. The Defendant made promises and misrepresentations to the Plaintiff in connection with the advancing of expenses of GMJ including, but not limited to, the following: the purpose for which the Defendant was obtaining money from the Plaintiff, the use of such money, and the timing and manner of repayment of such money.

102. The Defendant wrongfully and intentionally converted property and money of KVB which comprises the Obligation, including, but not limited to, diverted accounts receivable, the TT&S Sale proceeds, and other proceeds from sales of GMJ's assets to Johnson, the Peterbilt Proceeds, the Liberty Mutual Funds, the proceeds from the Midwest sale, or other Collateral proceeds that were utilized by the Defendant for his personal use and expense.

103. These actions were without just cause or excuse.

14
Case 13-06101    Doc# 1    Filed 11/01/13    Page 14 of 16

104. The Defendant acted with the specific intent to cause injury to the Plaintiff, or in the alternative, knew or reasonably believed that an injury was substantially certain to occur as a result of the Defendant's actions.

105. The Defendant knew that the diversion of the accounts receivable; the TT&S Sale proceeds and other proceeds from sales of GMJ's assets to Johnson; the Peterbilt Proceeds; the proceeds from the Midwest sale; and other diverted Collateral proceeds could then not be applied to the loan balance of the Promissory Notes owned and held by the Plaintiff.

106. The Plaintiff has been damaged as a proximate result of the actions of the Defendant.

107. The Defendant concealed from the Plaintiff, and did not disclose, his true intent in obtaining advances of money from the Plaintiff. The Defendant willfully and maliciously injured the Plaintiff by concealing this information.

108. The Defendant's actions and the Obligation created thereby constitute grounds for an objection to discharge under 11 U.S.C. § 523(a)(6).

## CONCLUSION

109. The Plaintiff reserves its right to amend its Complaint to include other objections to discharge as to the Defendant's obligation to the Plaintiff, as may become apparent through discovery.

110. The Plaintiff is entitled to judgment by the Court that the entirety of the Defendant's Obligation to the Plaintiff is not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

WHEREFORE, the Plaintiff demands judgment excepting from the Defendant's discharge the Obligation owed to the Plaintiff, for determination by the Court as to the amount owed to the Plaintiff by the Defendant, for the costs of this action, and for such other and further relief as the Court deems fair, just, and equitable.

Respectfully Submitted,

**STEVENS & BRAND, LLP**


**By:** *s/ Patricia E. Hamilton*
Patricia E. Hamilton, #13263
Wesley F. Smith #18517
Kristin L. Ballobin #24629
917 SW Topeka Blvd
Topeka, Kansas 66603
(785) 408-8000; (785) 408-8003 (Fax)
**Counsel for Kaw Valley Bank**