Filed
1/11/12
@ 5:04 P.M.
by [signature]
Larry D Hendricks

Patricia E. Hamilton, #13263
Wesley F. Smith #18517
Kristin L. Ballobin #24629
STEVENS & BRAND, L.L.P.
515 S. Kansas Ave., Suite 200
Topeka, Kansas 66603
(785) 408-8000
(785) 408-8003 (fax)
Attorneys for Plaintiff

**IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS**

KAW VALLEY BANK,
a Kansas banking corporation,

Plaintiff

vs.

GMJ GLOBAL LOGISTICS, INC.,
f/k/a GMJ CO., INC., *et al.*,

Defendants.

Case No. 12 CV 29

Div No. 6

Proceeding Under K.S.A. Chapter 60.
Title to Real Estate Involved

**ORDER APPOINTING RECEIVER EX PARTE**

On this 11th day of January, 2012, the Plaintiff's Application for Ex Parte Appointment of a Receiver and Memorandum in Support (the "Application")[1], comes for hearing and the Court's consideration. Applicant, Kaw Valley Bank ("KVB"), appears through counsel, Patricia E. Hamilton and Wesley F. Smith of Stevens & Brand, LLP. There are no other appearances.

The Court, having duly considered the allegations of the Petition and the Application, arguments and representation of counsel, and being advised in the premises, including that the Hersh Entities have waived their right to object to the appointment of a receiver; finds that the immediate appointment of a receiver is necessary to keep, preserve, and protect the

[1] All defined and undefined terms in this Order Appointing Receiver Ex Parte have the same meaning as set forth in the Petition and Application.

Entities waived the right to object and receive notice of the appointment of a receiver, no further notice or opportunity to be heard is necessary pursuant to K.S.A. § 60-1304. The Court further finds that Todd A. Luckman ("Luckman"), is qualified to act as a receiver (the "Receiver") in this case. Accordingly, the Court makes the following findings and orders:

1. KVB filed its Petition and Application on Monday, January 9, 2012.

2. Plaintiff KVB and one or more of the Hersh Entities have been involved in a long standing loan relationship dating back several years.

3. Pursuant to the terms of the Loan Documents, as of January 6, 2012, the Hersh Entities are personally liable to KVB in the amount of $4,966,151.25, in principal, and $83,154.10, in interest (the "**Obligation**").

4. The Obligation is secured by a Security Interest and Mortgages secured by Collateral, including personal property and real property, all as more fully described in the Petition, Application and the Loan Documents.

5. On October 14, 2011, KVB gave notice to the Hersh Entities that the obligations under the Promissory Notes had been accelerated and that all amounts owing under the due and owing under the Promissory Notes were immediately payable (the "Notice of Acceleration and Demand"). A copy of the Notice of Acceleration and Demand is attached to the Petition as Exhibit F. Despite the written Notice of Acceleration and Demand, the balance of the Promissory Notes remains unpaid.

6. The Court orders the ex parte appointment of Todd Luckman as Receiver and finds that pursuant to section 8.5 of the Mortgage, Sports 635, LLC irrevocably consented to the appointment of a receiver for the Collateral without notice and without regard for the adequacy of the security for the debt. As provided in the Mortgage, KVB "[u]pon occurrence of any [e]vent of [d]efault . . . Mortgagee shall be entitled without notice to Mortgagor to apply at any time to a court having jurisdiction thereof for the appointment of a receiver" of the Collateral, including all proceeds thereof". *See* § 8.5 of the Mortgage,

attached as Exhibit B to the Petition. Defendant Sports 635, LLC, waived "the right to object to the appointment of a receiver" and expressly granted "that such appointment shall be made ex parte and without notice." *Id.* Additionally all Hersh Entities consented to the appointment of a receiver on an *ex parte* basis by virtue of their collective assent in the Cross-Default Agreement.

7. All Hersh Entities have consented to the appointment of the Receiver on an *ex parte* basis and the Court has jurisdiction and authority to Order the ex parte appointment of the Receiver.

8. This Court is also authorized to appoint the Receiver pursuant the Mortgage and Kan. Stat. Ann. § 60-1301.

9. The value of KVB's liens and security interests in the Collateral and the Proceeds are subject to imminent and irrevocable damage. Without the immediate appointment of the Receiver, the Collateral is subject to irreparable waste and damage.

10. The Hersh Entities do not have sufficient unencumbered capital or funds necessary to maintain the Collateral and protect it from waste and damage.

11. The probable value of the Collateral is less than the amount of the Obligation.

12. Mr. Luckman possesses the skills and abilities commensurate with the task of acting as Receiver of the Collateral.

13. The Hersh Entities and its officers, members, managers, representatives, and agents, including, but not limited to George M. Hersh and Marsha Hersh, shall immediately turn over to the Receiver all proceeds or other Collateral Income (defined below) relating to the Collateral that are currently in their possession or that may in the future come into their possession, and to provide an accounting for all proceeds received since October 26, 2011.

14. The Receiver shall take possession of the Collateral, all deposit accounts,

and other accounting documents necessary for the Receiver to carry out his duties and to comply with his powers pursuant to this Order. The Receiver is vested with all of the usual and statutory powers of a Receiver and has the right and power, either personally or through his employees, agents, and independent contractors, to:

a. Assume control over the Collateral and collect rents, issues, income, deposits, receipts, revenues, proceeds, and profits from the Collateral (collectively, the "Collateral Income"), which includes amounts owed to the Hersh Entities prior to the date of this Order;

b. Maintain, secure, manage, operate, repair, and preserve the Collateral as deemed necessary and appropriate by the Receiver;

c. Redirect company mail for the Hersh Entities to a Post Office Box or other suitable location suitable for exercising complete control over the mail of the Hersh Entities;

d. Open and review mail directed to one or more of the Hersh Entities or its representatives pertaining to the Collateral;

e. Seek turnover of all Accounts Receivable and/or Proceeds of KVB Collateral from George Hersh and/or Marsha Hersh or any other third party who refuses to comply with the requests of any of the representatives of the Hersh Entities or KVB.

f. Seek turnover of the Liberty Mutual Insurance Proceeds for roof damage on the 4600 Kansas Building;

g. Continue negotiating with Liberty Mutual Insurance Company on the Disputed Claim;

h. Obtain information and any proceeds from any sale by any Hersh Entities related to the sale of any assets related to TT&S either to Johnson Storage and Moving or any other third party;

i. Obtain information and any proceeds and any other sale or transfer of Collateral or property of any of the Hersh Entities;

j. Take possession of the proceeds of the Apple Stock.

k. Execute documents necessary to effectuate settlement of the Ducati Settlement and any other settlement beneficial to any of the Hersh Entities.

l. Gather and liquidate all titled vehicles and trailers;

m. List the 4600 Kansas building for sale;

n. Negotiate the sale of any and all storage contracts of any other Hersh Entities, including but not limited to the storage contracts at 4600 Kansas Building and Capital City Distribution;

o. Make arrangements for the return and/or turnover of the remainder of KVB's Collateral.

p. Apply the Collateral Income to pay the necessary expenses of maintaining and operating the Collateral (which may in the Receiver's reasonable discretion include debts that the Hersh Entities incurred prior to the date of this Order), including without limitation the payment of taxes, utilities, insurance premiums, and existing service contracts on the Collateral, but no Collateral Income may be used to pay expenses relating to the period prior to the date of this Order unless Applicant agrees to, or the Court enters an order approving, the payment;

q. Change any locks to the Collateral and, if appropriate, limit access to some or all of the Collateral;

r. Allow KVB, its counsel and appraisers, or other independent third-party consultants engaged by KVB its counsel access to the Collateral at all reasonable times to inspect the Collateral and all books and records, and to cooperate with KVB, its counsel, appraisers, and other independent third-party consultants to evaluate the Collateral;

s. Receive and endorse checks pertaining to the Collateral either in the Receiver's name or in one or more of the Hersh Entities' name, as the Receiver deems fit;

t. Pay all appropriate real estate taxes, personal property taxes, and any other taxes or assessments against the Collateral as the Receiver deems necessary and appropriate;

u. Determine and report to the Court and KVB whether any Collateral Income previously received by the Hersh Entities has been used for purposes other than for the maintenance, management, and expenses of the Collateral or payment of loan obligations;

v. Seek assistance of law enforcement officials as necessary to preserve the peace and protect the Collateral;

w. Make payments and disbursements, in the ordinary course of business, as may be needed and proper for the protection and preservation of the Collateral; and

x. In its discretion, institute, prosecute, defend, compromise, intervene in, or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the protection, maintenance, and preservation of the Collateral, for the carrying out of the terms of any order of the Court affecting the Collateral, to collect rents and other amounts now or hereafter becoming due, to remove tenants or other persons or entities from the Collateral, and to defend against any action brought against the Receiver acting in such capacity, and, to retain attorneys and other professionals in connection with the foregoing.

15. Notwithstanding anything to the contrary in this Order, neither the Receiver nor the Receivership estate shall be liable for the payment of any taxes, assessments, goods, or services provided to the Hersh Entities or the Collateral, or utility charges that relate to the period prior to the date of this Order. Any individual or entity receiving a copy of this Order is hereby enjoined and restrained (a) from discontinuing service to the Receiver or the Collateral based upon the nonpayment of such taxes, assessments, goods, services, or utilities for the period prior to the date of this Order and (b) from attempting to collect taxes, assessments, invoices, and utility charges from the Receiver for the period prior to the date

of this Order. Each utility company or entity providing service to the Collateral shall forthwith transfer any deposits that it holds to the exclusive control of the Receiver and shall be prohibited from demanding that Receiver deposit additional funds in advance to maintain or secure such service.

16. The Receiver shall be entitled to an hourly fee of $175 per hour for himself and the partners of his law firm, and $125 per hour for associates of his law firm and $50 per hour for law clerks and paralegals of his law firm for receivership services. The Receiver is authorized to pay his monthly fees from Collateral Income without further Court order.

17. The Court finds the receiver is bonded in the amount of $ 500,000 by and accepts that bond as adequate under K.S.A. § 60-1302.

18. The Receiver has the power to institute and prosecute all actions or proceedings necessary for the recovery of Collateral Income and is hereby authorized to receive or to recover possession of all or any part of the Collateral.

19. The Receiver is directed to prepare and file, on or before February 15, 2012, and on the 15th day of each month thereafter that the Collateral remains in the Receiver's possession and care beyond that date, a full and complete report (each, a "Monthly Report") setting forth all receipts and disbursements and reporting all changes in the assets in its charge, or claims against the assets, that have occurred during the period that the Monthly Report covers. The Receiver will file the Monthly Reports with the Clerk of this Court and shall serve a copy of each Monthly Report upon Applicant, counsel for Applicant, and the Hersh Entities by first class mail.

20. The Receiver may maintain a bank account in the name of the Receiver in which the Receiver may deposit all Collateral Income that the Receiver receives or that is derived from the Collateral and from which the Receiver is to pay the necessary expenses and all other operating costs incurred during the Receivership.

21. Nothing in this Order shall require the Receiver to advance funds other than from Collateral Income without a bond or security for payment satisfactory to the Receiver. If the Collateral does not generate sufficient Collateral Income to pay the Receiver's fee and other costs of the Receivership, KVB may advance the funds necessary to pay the Receiver's fees and other costs of the Receivership to which KVB agrees, or which the Court orders be paid, and add those advances to the amounts due under the Loan Documents secured by the Collateral. All advances to the Receiver by KVB for the benefit of the Receiver's performance under this Order and as appropriate to preserve, protect and collect the Collateral and Proceeds, including any advances for working capital, improvements, or any other costs or expenses incurred by the Receiver, will be deemed protective advances under the Loan Documents, and any such protective advances will be secured by KVB's lien and security interest against the Collateral. Without derogating from the foregoing, all funds advanced by Applicant to the Receiver pursuant to this Order shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed by the Hersh Entities to KVB; and (c) be deemed secured by the liens and security interests in favor of Applicant under the Loan Documents against the Collateral to the same extent and with the same priority as the other indebtedness secured by all existing liens and security interests under the Loan Documents in favor of KVB. All such funds advanced, including interest on such advances, shall be deemed a prior lien before the repayment of any and all other claims against the Collateral (except for the Receiver's fees and expenses and except for taxes and assessments having first priority as a matter of law) or the proceeds thereof.

22. All persons in possession of or having control over any documents, leases, or accounting records relating to the operation of the Collateral shall, upon request, deliver them to the Receiver immediately, and shall account for and pay over to the Receiver any funds in such person's possession, either in the form of rents, profits, or security deposits. Included within these records are copies, if any, of all leases, documents of sale transactions

concerning collateral of property of any of the Hersh Entities, rent rolls, names of tenants, copies of service contracts and utility bills, any and all current or past operating statements of the Collateral and any other documents maintained by the Hersh Entities or its agent(s) pertinent to the operation and management of the Collateral.

23. The Hersh Entities, George M. Hersh and Marsha Hersh and their agents, servants, employees, representatives, and attorneys are hereby directed not to interfere in any way with the Receiver in the performance of the responsibilities and duties vested in the Receiver by this Order or further order of this Court.

24. Receiver may apply to this Court by motion and upon notice to all parties for further or other authority as may be necessary in its performance of his duties.

25. Receiver shall submit a status report to the Court within thirty (30) days of the date of this Order. The Receivership shall terminate upon receipt of Receiver's final accounting and formal discharge by final Order of this Court. Notwithstanding anything in this Order to the contrary, within 45 days following the sale of the Collateral at a foreclosure sale under the Mortgage, or otherwise, the Receiver shall file with this Court and serve upon the parties its final accounting and a motion for approval thereof, the termination of this Receivership, and the discharge of Receiver to be considered as soon as practical at a hearing held on notice to defendant.

26. The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of Defendant's creditors because of its duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Kansas law.

27. Without limiting any other rights or immunities the Receiver might have at law or in equity, the Receiver shall have no liability for acts or omissions made by or on behalf of

it in its capacity as the Receiver of the Collateral, so long as such acts or omissions are made in good faith and without gross negligence.

28. The Receiver can be removed either (a) automatically thirty (30) days after KVB files with the Court a written demand for removal or (b) in the Court's equitable discretion, upon motion for cause. If the Receiver is removed, a successor receiver can be appointed by a stipulated order submitted by KVB and the Hersh Entities or upon request by Applicant, with the Court's approval.

29. Nothing in this Order precludes Luckman from requesting permission from this Court to terminate the Court's appointment of Luckman as the Receiver in this case; provided, however, that Applicant shall have not less than 30 days' notice of the hearing on any such request.

30. To the extent not provided for above, the Receiver shall have those additional rights and powers as set forth in K.S.A. §§ 60-1301 and 60-1303.

Judge of the District Court

Prepared, Submitted and Approved

**STEVENS & BRAND, LLP**

By: ______________________

Patricia E. Hamilton, #13263
Wesley F. Smith #18517
Kristin L. Ballobin #24629
515 S. Kansas Ave., Suite 200
Topeka, Kansas 66603
(785) 408-8000; (785) 408-8003 (fax)
**Counsel for Kaw Valley Bank**